OPINION OF THE COURT
 

 Titone, J.
 

 The narrow issue before us in this declaratory judgment action is whether the "product hazards” exclusions in the insurance policies at issue relieve defendant insurers of the duty
 
 *174
 
 defend their insured, an asbestos insulation contractor, in 21 underlying personal injury suits. We resolve this question in favor of the insured because defendant insurers have failed to establish that the personal injury claims fall entirely within the product-hazards exclusions.
 

 Plaintiff Frontier Insulation Contractors, a Buffalo-based industrial and commercial insulation contractor, engaged in the business of installing and applying asbestos insulation on plumbing, fittings, ductwork, boilers and other equipment from 1929 through the 1970’s. Frontier purchased comprehensive general liability insurance policies from defendants Merchants Mutual Insurance Company, Utica Mutual Insurance Company and Travelers Insurance Company, to cover its asbestos installation operations. This appeal concerns only one policy issued by defendant Utica and five policies issued by defendant Merchants in which the insurers agreed to pay on Frontier’s behalf "all sums” which the insured shall become legally obligated to pay as damages because of bodily injury due to an accident or occurrence, including the continued exposure to conditions.
 

 Between 1993 and 1994, Frontier was named as a defendant in 21 lawsuits alleging bodily injury and resulting damages caused by asbestos exposure at various locations. Both insurers disclaimed coverage pursuant to "product hazards” exclusions contained in their respective policies.
 

 Frontier brought this action, seeking a declaration that defendant insurers have a duty to defend and indemnify it in the underlying personal injury suits. Supreme Court granted Frontier’s motion for partial summary judgment, and, with relevance to this appeal, declared that Merchants had a duty to defend Frontier in 18 of the 21 actions, and Utica in 15 of the 21 actions. The court rejected the insurers’ claims that their product-hazards exclusions relieved them of their duties to defend and indemnify Frontier, and did not accept defendants’ late-notice defenses.
 

 The Appellate Division disagreed. The Court ruled that "[bjecause none of the underlying complaints alleges any cause of action sufficiently removed from the allegedly defective and injurious nature of the asbestos to warrant classifying Frontier’s liability as something other than a 'products hazard’ * * * defendants have no obligation to defend or indemnify Frontier.” (238 AD2d 894, 896.) Given its conclusion that the product-hazards exclusions relieved the insurers of their duty to defend, the Court declined to address the parties’ remaining contentions.
 

 
 *175
 
 Two Justices in dissent noted that the products-hazard exclusion "does not apply * * * if the plaintiffs were exposed to asbestos during the course of Frontier’s installation operations”
 
 (supra,
 
 238 AD2d, at 897). Thus, the dissenters concluded that "[b]ecause the plaintiffs’ exposure could have occurred in a variety of ways, only some of which are potentially excluded from coverage, the insurers may not be relieved of their obligation to provide a defense to Frontier by virtue of the 'products hazard’ provisions in their policies”
 
 (id.,
 
 at 897). This two-Justice dissent on a question of law provides the jurisdictional predicate for the appeal to this Court (CPLR 5601 [a]). We now modify the Appellate Division’s order, and remit for further proceedings.
 

 The duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer "has actual knowledge of facts establishing a reasonable possibility of coverage”
 
 (Fitzpatrick v American Honda Motor Co.,
 
 78 NY2d 61, 65-67). To be relieved of its duty to defend on the basis of a policy exclusion, the insurer bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision
 
 (Continental Cas. Co. v Rapid-American Corp.,
 
 80 NY2d 640, 652;
 
 Allstate Ins. Co. v Zuk,
 
 78 NY2d 41, 45). If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action
 
 (Seaboard Sur. Co. v Gillette Co.,
 
 64 NY2d 304, 311).
 

 Defendant insurers contend that all of the claims in the underlying complaints fall wholly within the policies’ exclusions for product hazards because they all allege that bodily injuries resulted from exposure to Frontier’s asbestos products. This claim misses the mark, however, because the focus in determining whether a product-hazard exclusion applies is not simply whether an insured’s product caused the loss at issue, but rather "is dependent on the location of the accident and the possession of the product” (Henderson,
 
 Insurance Protection for Products Liability and Completed Operations
 
 — What
 
 Every Lawyer Should Know,
 
 50 Neb L Rev 415, 420). Defen
 
 *176
 
 dants’ argument fails to appreciate that an exclusion for product hazards governs only one subset of product liability claims.
 

 The insurance industry has segregated product-liability hazards and the premiums charged therefor by categorizing them as either risks arising while work is in progress, or as those arising from the defective nature of a completed product that has been placed in the stream of commerce (7A Appleman, Insurance Law and Practice § 4508, at 340 [Berdal ed]). An insured may cover the first risk by purchasing coverage for "premises-operations” (7A Appleman,
 
 op. cit.,
 
 § 4508, at 340; § 4508.03, at 388-389). Historically, this category of coverage was designed to protect a manufacturer from injuries to third persons on the business premises, or from those that occur during operations away from the normal business premises while the insured retains control of the jobsite (Henderson,
 
 op. cit.,
 
 at 417;
 
 see also, Friestad v Travelers Indem. Co.,
 
 260 Pa Super 178, 182, n 2, 393 A2d 1212, 1213, n 2). Frontier purchased premises-operations coverage from both defendants.
 

 The distinct risk of loss occasioned by a defect in the insured’s product, which manifests itself only after the insured has relinquished control of the product and at a location away from the insured’s normal business premises, is covered by the purchase of separate "products hazard” coverage (7A Appleman,
 
 op. cit.,
 
 at 341).
 
 *
 
 This class of coverage generally protects a manufacturer or seller against claims of injury due to a product defect, breach of warranty and misrepresentation (Henderson,
 
 op. cit.,
 
 at 426). Insurance clauses that
 
 exclude
 
 coverage for product hazards — such as those at issue here — are thus designed to preclude the insurer’s liability for events that occur after its insured’s product is placed in the stream of commerce.
 

 The product-hazards exclusions here accomplished that goal by exempting from coverage only those bodily injuries arising out of the "named insured’s products” that occur
 
 "away
 
 from premises owned by or rented to the named insured and
 
 after
 
 
 *177
 
 physical possession of such products has been relinquished to others” (emphasis supplied). The term "named insured’s products” is defined in the insurance contracts as "goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name.”
 

 As an initial matter, defendants contend that the asbestos was Frontier’s "product” even if it did not manufacture or sell the insulation it installed because it necessarily "handled” the asbestos during its operations as that term is broadly understood. To be sure, the term "handled”, standing alone, could be construed to refer to any touching of a product in connection with the provision of a service, as defendants contend. However, we conclude that the term’s association with the words "manufacturer” and "seller” in the same clause indicates that it should be given its commercial connotation, and construed to refer to products in which the insured trades or deals
 
 (Todd Shipyards Corp. v Turbine Serv.,
 
 674 F2d 401, 420 [5th Cir 1982]). That narrower construction makes practical sense, given that the goal of product-hazards coverage is to insure the party who is responsible for sending goods into the stream of commerce (Henderson,
 
 op. cit.,
 
 at 429-430).
 

 Whether the offending asbestos here was Frontier’s "product” is a question of fact that cannot be resolved on this record in this summary judgment posture. Assuming that fact to be established, however, defendants will only be relieved of their duty to defend on the basis of these product-hazards exclusions if they can show that all of the underlying claims fall squarely within those clauses and are susceptible of no other interpretation.
 

 Defendants have failed to establish that all of the underlying bodily injury claims satisfy the time and place prerequisites of the product-hazards exclusion. The exclusions, by definition, cannot apply to accidents or occurrences that allegedly took place while Frontier’s installation work was in progress because the offending product — the asbestos insulation — was not relinquished from Frontier’s control until installation was complete. In fact, a number of the plaintiffs in the underlying lawsuits expressly allege that Frontier’s "negligent installation” of the asbestos insulation caused their personal injuries. More importantly, none of the underlying complaints specify that the plaintiffs’ personal injuries occurred only
 
 after
 
 Frontier had completed installation and departed from the covered premises. Since asbestos fibers may be readily released into the air and inhaled while a contractor is cutting and sawing the
 
 *178
 
 product during installation, there is a reasonable possibility that any liability attributed to Frontier would stem from injuries that occurred during ongoing operations — covered events. Accordingly, defendants have failed to establish as a matter of law that the product-hazards exclusions provide shelter from their duty to defend Frontier
 
 (Seaboard Sur. Co. v Gillette Co.,
 
 64 NY2d 304, 311,
 
 supra).
 

 Frontier also asks this Court to declare that defendant insurers have a duty to
 
 indemnify
 
 it in all of the underlying actions. In essence, Frontier contends that the duty to indemnify is coextensive with the duty to defend here because the insurers failed to establish that the underlying complaints fall entirely within a policy exclusion. However, an unbroken line of cases establishes that an insurer’s duty to defend is broader than its duty to indemnify
 
 (Continental Cas. Co. v Rapid-American Corp.,
 
 80 NY2d 640, 648,
 
 supra; Servidone Constr. Corp. v Security Ins. Co.,
 
 64 NY2d 419, 424;
 
 Ruder & Finn v Seaboard Sur. Co., 52
 
 NY2d 663, 669). As this Court has explained, "an insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy’s coverage”
 
 (Fitzpatrick v American Honda Motor Co.,
 
 78 NY2d, at 65,
 
 supra).
 
 While the duty to defend is measured against the possibility of a recovery, "the duty to pay is determined by the actual basis for the insured’s liability to a third person”
 
 (Servidone Constr. Corp. v Security Ins. Co.,
 
 64 NY2d 419, 424,
 
 supra).
 
 Thus, we decline to pass on the question of defendants’ duty to indemnify at this early juncture, which predates any ultimate determination of the insurers’ liability.
 

 As a final matter, in light of its conclusion that defendants had no duty to provide Frontier with a defense because all of the underlying complaints fell within the policy exclusion for products hazards, the Appellate Division failed to consider the parties’ remaining contentions, including the insurers’ claims that they were entitled to a declaration that they have no duty to defend or indemnify Frontier in certain actions because the accidents or occurrences constituted noncovered events or did not fall within the periods of coverage under the six policies at issue. An affirmative declaration that defendants must defend Frontier in any of the underlying actions must await a determination of these claims.
 

 Accordingly, the order of the Appellate Division should be modified in accordance with the opinion herein, with costs to
 
 *179
 
 appellant, and the case remitted to the Appellate Division for consideration of issues raised but not determined on appeal to that Court, and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order modified, etc.
 

 *
 

 To be distinguished from "product hazards” insurance is "completed-operations” insurance, which provides coverage for injuries arising from the insured’s service "operations which do not involve goods or products manufactured, sold, handled or distributed by the insured” (Henderson,
 
 op. cit.,
 
 at 434). Completed-operations insurance covers the risk of loss for bodily injury or property damage that arises out of the insured’s operations, if those losses occur after the operations have been completed and away from the insured’s premises
 
 (Berger Bros. Elec. Motors v New Amsterdam Cas. Co.,
 
 293 NY 523, 527).