NAPOLI, KAISER & BERN,
LLP, Plaintiff,

v.

WESTPORT INSURANCE
CORPORATION,
Defendant.

No. 02 Civ. 7931(JGK).

United States District Court,
S.D. New York.

Dec. 15, 2003.

Michael A. Castelli, Nicoletti Hornig Campise Sweeney & Paige, New York City, for plaintiff.

Peter C. Contino, Michael V. De Santis, Rivkin Radler, LLP, Uniondale, NY, George J. Manos, Rostyslaw J. Smyk, Bollinger, Ruberry & Garvey, Chicago, IL, for defendant.

## OPINION and ORDER

KOELTL, District Judge.

This case involves a dispute over whether the defendant, Westport Insurance Corporation ("Westport"), has the duty to defend the plaintiff, Napoli, Kaiser & Bern, LLP ("NKB"), in connection with two lawsuits brought against NKB by two other law firms-Parker & Waichman and Davis, Saperstein & Salomon ("the Claimant Firms"). The plaintiff has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and seeks reimbursement for over $727,000 NKB has spent in attorneys' fees thus far. The defendant opposes the plaintiff's motion and cross-moves for summary judgment on the grounds that the underlying complaints allege contractual damages and fraudulent conduct, which are not covered by the insurance policy. In the alternative, Westport argues that if it has an obligation to defend NKB as a matter of law, Westport is still entitled to discovery and a trial on the issue of the amount of attorneys' fees owed to NKB.

### I.

The relevant facts as alleged in the papers, pleadings, and the underlying complaints are as follows. NKB is a law firm that purchased a "claims-made" Lawyers Professional Liability Insurance Policy (the "Policy") from Westport. The Policy provides that Westport will defend and indemnify NKB with respect to claims made during the policy period arising out of legal services rendered by NKB. The relevant coverage provision states: "The CLAIM must arise by reason of an act, error, omission or PERSONAL INJURY.... Coverage shall apply to any such CLAIMS arising out of services rendered or which should have been rendered by any INSURED, and arising out of the conduct of the INSURED'S profession as a lawyer...." (Policy § I.A, attached at Decl. of Peter Biging, Ex. A.) The Policy contains an exclusion for "any CLAIM arising out of any dishonest, fraudulent, or malicious acts, errors, omissions, or deliberate misrepresentations." (Id. Exclusion A.)

In November 2001, Parker & Waichman filed a complaint against NKB in the New York State Supreme Court, New York County. See Parker & Waichman v. Napoli, No. 605388/01 (N.Y. Sup.Ct. filed Nov. 1, 2001) (Complaint) (attached at Biging Decl., Ex. B) ("P & W Compl."). Davis, Saperstein & Salomon filed a virtually identical complaint in the Southern District of New York in December 2001. See Davis, Saperstein & Salomon, P.C., v. Napoli, No. 01 Civ. 11328 (S.D.N.Y. filed Dec. 11, 2001) (Complaint) (attached at Biging Decl., Ex. D) ("DSS Compl."). Both firms had referred to NKB thousands of clients in connection with the "New York Diet Drug Litigation" involving "Fen–Phen" and "Redux." NKB, which was already representing clients directly, agreed to represent the clients referred to it and to share with the Claimant Firms a substantial percentage of the net legal fees for the referred clients. (See P & W Compl. ¶¶ 8–9; DSS Compl. ¶¶ 16–17.)

The Claimant Firms alleged that NKB "fraudulently, unfairly, and unjustly" obtained settlements that provided NKB's direct clients higher awards than their cases were worth, while providing NKB's referred clients with awards that were far

less than their actual worth. (P & W Compl. ¶ 22; DSS Compl. ¶ 29.) As a result, the referring firms allegedly recovered "far less than that to which they were entitled." (P & W Compl. ¶ 24; DSS Compl. ¶ 31.) The Claimant Firms also asserted that NKB made misrepresentations in order to induce them and the referred clients into signing the unfavorable settlement agreements. (P & W Compl. ¶¶ 25–30; DSS Compl. ¶¶ 33–39.) The complaints further alleged that NKB misappropriated funds from, and fraudulently assessed costs to, the referred cases, thus reducing the Claimant Firms' overall recovery. Finally, the Claimant Firms alleged, "With respect to certain of the Referred Cases, the Napoli Partnerships failed to contact the clients to represent them or failed to prosecute their cases...." (P & W Compl. ¶ 41; DSS Compl. ¶ 49.)

Based on these allegations, the first cause of action in each complaint was for breach of contract with the referring firms and the referred clients and breach of the contractual obligation of good faith and fair dealing. (P & W Compl. ¶¶ 52–55; DSS Compl. ¶¶ 57–60.) The second cause of action in each complaint alleged that NKB "knowingly, intentionally, maliciously, and in bad faith defrauded the plaintiff and the Referred Clients." (P & W Compl. ¶ 57; DSS Compl. ¶ 62.) The third cause of action in each complaint was for breach of fiduciary duty owed to the referred clients and referring firms, but neither complaint specified whether the breach was negligent or intentional. (See P & W Compl. ¶ 64; DSS Compl. ¶ 69.)[1]

## II.

The parties have moved for summary judgment on the defendant's duty to defend the plaintiff against the Claimant Firms. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *Gallo*, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

In this case, on the issue of the duty to defend there are virtually no material facts in dispute. The only potential factual dispute concerns the meaning of the Policy. Under New York law,[2] insurance policies are interpreted as contracts. *See Vill. of*

---

**1.** Both complaints included a fourth cause of action for accounting. The P & W complaint alleged eight causes of action: The fifth and sixth involved breach of the referral agreements, the seventh asserted fraud, and the eighth was for unjust enrichment. The DSS complaint included five causes of action. The fifth was for unjust enrichment.

**2.** This case was brought on the basis of diversity jurisdiction and there is no dispute that New York law should be applied.

*Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir.1995). While the interpretation of a contract is generally an issue of law, summary judgment cannot be granted if the contract is ambiguous and the court requires extrinsic evidence to determine the intent of the parties. *See Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1094–95 (2d Cir.1993).

## III.

Under New York law, an insurer's duty to defend is extremely broad and distinct from the duty to indemnify. *See Md. Cas. Co. v. Cont'l Cas. Co.,* 332 F.3d 145, 160 (2d Cir.2003) (calling duty to defend "exceedingly broader" than duty to indemnify (internal quotation omitted)); *Cowan v. Codelia, P.C.,* No. 98 Civ. 5548, 1999 WL 1029729, at *5 (S.D.N.Y. Nov.10, 1999); *Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 486 N.Y.S.2d 873, 476 N.E.2d 272, 275 (1984). To determine whether the duty to defend exists, courts first look to "the allegations within the four corners of the underlying complaint." *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.,* 91 N.Y.2d 169, 667 N.Y.S.2d 982, 690 N.E.2d 866, 868 (1997). "An insurer must defend whenever the four corners of the complaint suggest-or the insurer has actual knowledge establishing-a reasonable possibility of coverage." *Cont'l Cas. Co. v. Rapid–American Corp.,* 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506, 509 (1993), *quoted in Md. Cas. Co.,* 332 F.3d at 160; *Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co.,* 303 F.3d 419, 424 (2d Cir.2002).

The duty to defend exists unless "there is no possible factual or legal basis on which the insurer will be obligated to indemnify the insured." *Md. Cas. Co.,* 332 F.3d at 160 (internal quotation omitted); *Hotel Des Artistes, Inc. v. Transam. Ins. Co.,* No 93 Civ. 4563, 1994 WL 263429, at *3 (S.D.N.Y. June 13, 1994); *Frontier,* 667 N.Y.S.2d 982, 690 N.E.2d at 868–69. As the Court of Appeals for the Second Circuit emphasized, the duty to defend "perdures until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,* 252 F.3d 608, 620 (2d Cir.2001). To avoid defending the insured based on a policy exclusion, the insurer must show that the claims in the complaint fall " '*solely* and *entirely* within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation.' " *Seaboard Surety Co.,* 486 N.Y.S.2d 873, 476 N.E.2d at 276 (quoting with emphasis *Int'l Paper Co. v. Cont'l Cas. Co.,* 35 N.Y.2d 322, 361 N.Y.S.2d 873, 320 N.E.2d 619, 621 (1974)).

The insurer thus bears a "heavy burden" to show that the allegations of the complaint cast the pleadings wholly within the exclusions and that there is no possible factual or legal basis for finding liability covered by the policy. *Frontier,* 667 N.Y.S.2d 982, 690 N.E.2d at 868–69; *see also Hotel Des Artistes,* 1994 WL 263429, at *3 ("An insurer seeking to avoid its duty to defend bears a heavy burden, which, in practice, is rarely met."). Moreover, "[i]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *Frontier,* 667 N.Y.S.2d 982, 690 N.E.2d at 869; *see also Hotel Des Artistes,* 1994 WL 263429, at *3 ("[E]ven if only a single claim in the underlying complaint potentially falls within the indemnity coverage of the policy, the insurer must defend the entire action."); *Seaboard Sur. Co.,* 486 N.Y.S.2d 873, 476 N.E.2d at 275 (noting that it is immaterial if other claims fall within exclusions; duty to defend rests solely on whether any alleged facts or grounds bring action within protection purchased).

The underlying complaints by the Claimant Firms assert causes of action for

breach of contract, fraud, and breach of fiduciary duty. Fraudulent or intentional misconduct is clearly excluded by the Policy, and the plaintiff conceded at the argument of the motions that the breach of contract claims are also not covered. The plaintiff argues that Westport's duty to defend rests on the claims that NKB breached its fiduciary duty both to the referred clients and to the referring firms.

Westport contends that the claims for breach of fiduciary duty made by the referring firms are invalid as a matter of law. The underlying complaints raise at least two issues of law with respect to those claims: (1) whether the referring firms have standing to claim breach of fiduciary duty on behalf of the referred clients; and (2) even if they cannot raise such claims on behalf of the referred clients, whether NKB owed a fiduciary duty to the referring firms and whether NKB breached that duty. The parties represent that, with respect to the P & W suit in state court, a motion to dismiss is pending with respect to the first issue but not the second.[3]

It is unnecessary for this Court to decide those issues, which are better left to the courts adjudicating the underlying actions. The duty to defend exists "until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss Fashions,* 252 F.3d at 620. It is plain that NKB has been sued in part based on allegations that it breached its fiduciary duty to its clients-the referred clients. Indeed, the P & W lawsuit seeks $150,000,000 on behalf of the referred clients together with punitive damages of $500,000,000. (P & W Compl. ¶ 65.) That allegation falls squarely within the four corners of the Policy because it is a "CLAIM" arising by reason of an act, error or omission, arising out of services rendered or which should have been rendered by NKB, and arising out of NKB's profession as a lawyer. (*See* Policy § I.A.) The claim for breach of fiduciary duty to the referring firms also falls literally within the four corners of the Policy. P & W's complaint seeks $75,000,000 in damages for NKB's alleged breach of fiduciary duty to P & W (P & W Compl. ¶ 65), and there has not even been a motion to dismiss that claim. It therefore cannot be said that "there is no possible basis in law or fact on which the insurer might eventually be held to indemnify [NKB]." *Md. Cas. Co.,* 332 F.3d at 160. Regardless of the ultimate legal merits of those claims, it is plain that NKB is currently engaged in litigating them, that they fall within the terms of the Policy's coverage, and that they arguably arise from covered events. *See Frontier,* 667 N.Y.S.2d 982, 690 N.E.2d at 869. The insurer is therefore required to provide a defense against them. *See Seaboard Surety Co.,* 486 N.Y.S.2d 873, 476 N.E.2d at 275 (stating that liability insurance is in fact "litigation insurance" (internal quotations omitted)).

■ Westport argues, however, that the "gravamen" of the underlying complaints against NKB involve contractual damages and fraudulent conduct, neither of which are covered by the Policy. While Westport acknowledges that breach of fiduciary duty allegations can be based on a claim of negligence, Westport urges the Court to focus on the actual facts being pleaded and to conclude that the factual allegations are consistent only with intentional rather than negligent conduct. It is true that the duty to defend "depends on the facts which

---

**3.** In the action brought by DSS in the Southern District of New York, there was a stipulation to discontinue the action with prejudice with respect to the claims alleged by the plaintiff on its own behalf, and without prejudice with respect to the claims asserted by plaintiff on behalf of others.

are pleaded, not the conclusory assertions" listed in the complaint. *Allstate Ins. Co. v. Mugavero,* 79 N.Y.2d 153, 581 N.Y.S.2d 142, 589 N.E.2d 365, 370 (1992) (rejecting duty to defend in case involving violent sexual abuse). That principle, however, emerged in contexts where the allegations involved "intrinsically intentional acts," such as sexual assault, that could not be transformed into a claim of negligent infliction of harm simply by pleading negligence. *See Mugavero,* 581 N.Y.S.2d 142, 589 N.E.2d at 371; *see also Allstate Ins. Co. v. Oles,* 838 F.Supp. 46, 54 (E.D.N.Y. 1993) (refusing to characterize "acts of assault, rape, sodomy, and sexual abuse ... as anything other than intentional conduct"); *Sphere Drake Ins. Co. v. 72 Centre Ave. Corp.,* 238 A.D.2d 574, 657 N.Y.S.2d 65, 66 (App.Div.1997) (rejecting theory that "the intrinsically intentional act of assault could be negligently performed").

A breach of fiduciary duty claim can be based on negligence, and the complaints carefully do not allege that the breach was intentional. *See Hotel Des Artistes,* 1994 WL 263429, at *4 (enforcing duty to defend because complaint alleged breach of fiduciary duty by corporate directors, a claim that could be established by proof of negligence); *cf. Int'l Bus. Machs. Corp.,* 303 F.3d at 424 (calling complaint "deliberately equivocal" on key issue, and deciding that ambiguity as to coverage had to be resolved in favor of insured). The Claimant Firms, in addition to the primary allegations of fraud, have alleged that NKB breached its fiduciary duty in obtaining low settlements for the referred clients. It is entirely possible that the Claimant Firms will be unable to prove a scheme by NKB to distort settlements, but that they will be able to show that NKB negligently represented the referred clients. Such a "reasonable possibility" of coverage is sufficient to trigger the duty to defend. *See Md. Cas. Co.,* 332 F.3d at 160 (quoting

*Cont'l Cas. Co.,* 593 N.Y.S.2d 966, 609 N.E.2d at 509).

Westport asserts that nothing in the factual allegations suggests that NKB negligently rather than intentionally distorted the settlements. At the argument of the motions, however, the defendant conceded that if there were an allegation of a "lapse" by NKB in the fulfillment of its duties, that would be covered. There is an allegation of a "lapse": the Claimant Firms alleged that with respect to certain referred clients, "the Napoli Partnerships failed to contact the clients to represent them or failed to prosecute their cases." (P & W Compl. ¶ 41; DSS Compl. ¶ 49.) Those factual allegations would support a negligent breach of fiduciary duty claim, raising a legal and factual possibility that the Claimant Firms may recover on at least one claim without proving that NKB acted fraudulently or deliberately.

This case is similar to two other cases that enforced the duty to defend: *Cowan v. Codelia,* 1999 WL 1029729, and *Park Place Entertainment Corp. v. Transcontinental Insurance Co.,* No. 01 Civ. 6546, 2003 WL 1913709, at *5 (S.D.N.Y. Apr.18, 2003). In *Cowan,* the complaint alleged malicious and unlawful disclosure of personal information by defense lawyers concerning the prosecution in a criminal case that they were defending. But an intent to harm was not required for liability under the statute at issue, and the defendants claimed that there was no such intent. *Id.* at *7. Distinguishing cases involving acts like sexual assault, this Court found that the duty to defend existed because the insurer could not show that there was "no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured." *Id.* at *8 (internal quotations omitted). In *Park Place Entertainment,* the underlying complaints

alleged that the defendant had engaged in a "campaign of fraud, intentional tortious interference with contract, bad faith, and defamation." *Park Place Entm't Corp.*, 2003 WL 1913709, at *1. Although the complaints alleged only intentional and/or knowing defamation, the court noted that defamation could be proven without a showing of intent, and the defendant submitted an affidavit denying any such intent. Because there was "a reasonable possibility of a jury finding defamation without knowledge of falsity, raising a duty to indemnify," the court enforced the insurer's duty to defend. *Id.* at *5.

The complaints against NKB primarily allege intentional and fraudulent conduct. But there remains a reasonable possibility that NKB will be found liable for conduct covered by the policy. NKB may be found liable for breach of fiduciary duty based on its allegedly negligent conduct of the settlement negotiations and its negligent failure to contact certain referred clients, all of which damaged the referred clients and referring firms. It is not unreasonable for the Claimant Firms to argue that NKB acted intentionally and, in the alternative, negligently. *See Hotel Des Artistes*, 1994 WL 263429, at *4 (finding "no patent inconsistency" in alleging intentional misconduct while arguing that certain omissions were negligent).

Despite Westport's assertion that courts must look to the gravamen and general tenor of the complaint,[4] under New York law, the standard is whether there is any "possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Frontier*, 690 N.E.2d at 868–69. To be relieved of its duty to defend, the insurer must demonstrate that "each and every claim asserted" against the insured is "unambiguously not covered or unambiguously excluded from coverage." *Cowan*, 1999 WL 1029729, at *5. If one claim against NKB potentially falls within the Policy's coverage, Westport has a duty to defend the entire action. *See, e.g., id.* at *5; *Frontier*, 667 N.Y.S.2d 982, 690 N.E.2d at 869; *Seaboard Sur. Co.*, 486 N.Y.S.2d 873, 476 N.E.2d at 275. Westport, therefore, cannot escape its duty to defend by arguing that the Court should ignore the possibility that NKB will be found liable for a negligent breach of fiduciary duty to the referred clients and/or the referring firms.

## IV.

■ Westport next argues that a suit brought by another law firm for fees is not covered under the Policy, which insures against "any such CLAIMS arising out of services rendered or which should have been rendered by any INSURED, and arising out of the conduct of the INSURED'S profession as a lawyer." (Policy § I.A.) Westport contends that an arrangement between attorneys constitutes "business" or "commercial" conduct, as distinguished from an attorney's relation-

---

4. Westport cites several cases for the proposition that an insurer does not have to defend a suit where the "gravamen" of the complaint involves acts excluded by the policy. The cases cited by Westport, however, are all distinguishable based on the underlying facts and insurance provisions at issue. *See Chi. Ins. Co. v. Borsody*, 165 F.Supp.2d 592, 597 (S.D.N.Y.2001) (involving conspiracy to defraud brought under statute requiring knowing misconduct); *Bd. of Educ. v. Cont'l Ins. Co.*, 198 A.D.2d 816, 604 N.Y.S.2d 399, 400 (App.Div.1993) (holding that sexual harassment, like sexual abuse, cannot be considered accidental "occurrence"); *County of Broome v. AETNA Cas. & Sur. Co.*, 146 A.D.2d 337, 540 N.Y.S.2d 620, 621–22 (App.Div.1989) (finding that plaintiff could not argue that dumping waste over fourteen-year period and resulting pollution was an "occurrence" or "accident").

ship with clients, which is "professional conduct."

The cases cited by Westport in support of this proposition do not support a denial of a duty to defend in this case. For example, in *Cohen v. Empire Casualty Co.*, 771 P.2d 29, 31 (Colo.App.1989), Cohen hired an attorney to assist him on a case and later was sued for failure to pay for services rendered. *See also Am. Cas. Co. of Penn. v. Hotel & Rest. Employees & Bartenders Int'l Union Welfare Fund*, 113 Nev. 764, 942 P.2d 172, 176–77 (1997) (concluding that insured cannot "turn all of its legal liabilities into insured events by the intentional act of refusing to pay them"). The case before this Court does not involve a "fee dispute" where NKB simply is withholding money owed to the Claimant Firms for the referrals. The claim is that NKB professionally conducted itself in a way that lowered the settlements for the referred clients and thus reduced the fees owed to the Claimant Firms. To the extent that NKB owes money to the Claimant Firms, it is by reason of the professional services rendered on behalf of the referred clients.

Westport further argues that the Policy only covers acts unique to the practice of law. Because people in any profession-such as doctors-can refer clients and receive fees, Westport argues that NKB's dispute with the Claimant Firms does not arise out of the unique conduct of the insured's profession as a lawyer. This argument, raised in a slightly different context, has been rejected by the Court of Appeals for the Third Circuit. *See Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 495–98 (3d Cir.2002) (finding coverage under professional liability policy where lawyer was sued as part of fraudulent business scheme, but he claimed to be, and was perceived to be, acting as victims' attorney). The Court found that, under Pennsylvania law, the phrase "arising out of the conduct of the insured's profession as a Lawyer" was ambiguous, and that the ambiguity should be construed in favor of the insured and thus in favor of coverage. *Id.* at 496–98.

In this case, the claims fall under the plain language of Policy because they arise out of NKB's conduct in obtaining settlements for the referred clients. The fact that the claims can also be construed to "arise out of" the referral agreements is irrelevant. If Westport had wanted to exclude claims that are related to fee disputes, it could have done so. At best, the Policy language is ambiguous, and, when considering the scope of coverage in an insurance policy, all ambiguities must be resolved against the insurer. *See, e.g., Hugo Boss Fashions*, 252 F.3d at 615 (stating that rule of resolving ambiguity in favor of insured is "well-established," and that in context of duty to defend, "an even stronger presumption in favor of coverage exists"); *Cowan*, 1999 WL 1029729, at *5 (requiring insurer to show that claim is "unambiguously not covered"); *cf. Bayer*, 284 F.3d at 497–98 (describing "professional services" as undefined and ambiguous phrase and thus construing policy in favor of insured). The claims in this case arise out of NKB's services as a lawyer and are thus covered by the Policy.

## V.

Westport's final argument is that because the lawsuits arise out of an allegedly fraudulent scheme, they fall within Exclusion A of the Policy, which denies coverage for "any CLAIM arising out of any dishonest, fraudulent, or malicious acts, errors, omissions, or deliberate misrepresentations." Westport contends that although some claims against NKB may fall within the coverage of the Policy, Exclusion A is broad enough to relieve it of the duty to

defend because the "gravamen" of the complaints involve a fraudulent scheme.

"To be relieved of its duty to defend on the basis of a policy exclusion, the insurer bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, [and] that the exclusion is subject to no other reasonable interpretation...." *Frontier*, 667 N.Y.S.2d 982, 690 N.E.2d at 868–69; *see also Cowan*, 1999 WL 1029729, at *5 (stating that insurer must demonstrate that "each and every claim" is "unambiguously excluded from coverage"). The rule that a court should construe ambiguity against the insurer is "especially applicable" in the context of an exclusionary clause. *McCostis v. Home Ins. Co. of Ind.*, 31 F.3d 110, 113 (2d Cir.1994). Policy exclusions must be "specific and clear" and "are to be accorded a strict and narrow construction." *Seaboard Sur. Co.*, 486 N.Y.S.2d 873, 476 N.E.2d at 275. In *Seaboard Surety Co.*, for example, the policy excluded any claim or suit "arising out of" fraudulent or misrepresenting advertising. *Id.* at 274. Although misleading advertising was at the core of the underlying lawsuit, the court enforced the duty to defend because the claims in a complaint must fall *"solely* and *entirely* within the policy exclusions" for the insurer to be relieved of its duty to defend. *Id.* at 276 (internal quotation omitted).

Westport's argument with respect to the scope of the exclusion is really no different from its arguments over the scope of the coverage of the Policy, and they fail for the reasons. The exclusion does not plainly exclude all of the conduct alleged in the underlying complaints. The breach of fiduciary duty claims in the underlying complaints-and specifically the allegations of the failure to contact referred clients-create a reasonable possibility of liability covered by the Policy. The complaints clearly arise out of NKB's conduct in providing legal services, and they state claims that are not unambiguously excluded under the Policy. NKB's motion for summary judgment on Westport's duty to defend is therefore granted, and Westport's cross-motion is denied.

### V.

Westport argues that if this Court finds that Westport has a duty to defend NKB against the Claimant Firms, there is still a material issue of fact with respect to the amount of attorneys' fees and expenses owed to NKB. NKB does not dispute that Westport has a right to discovery and trial on the issue of whether the $727,000 in fees and expenses is reasonable, and, if not, the amount for which Westport is required to reimburse NKB. The parties shall have sixty days from the date of this Opinion and Order to complete discovery.

### *Conclusion*

For the reasons explained above, summary judgment is granted on behalf of the plaintiff with respect to the defendant's duty to defend the plaintiff in its litigation against Parker & Waichman and Davis, Saperstein & Salomon. Moreover, the defendant is obligated to reimburse the plaintiff for reasonable attorneys' fees and expenses already incurred in the defense of those lawsuits, although the amount of such fees and expenses owed cannot be decided on summary judgment. The parties are to complete discovery within sixty days and to report to the Court promptly on whether they consent to trial before a magistrate judge.

**SO ORDERED.**