Aaron BREWER, Alex Stylianou, Rita Bowman and William Walcott, individually and on behalf of all other similarly situated, Plaintiffs,

v.

VILLAGE OF OLD FIELD, Robert Bell, individually and in his capacity as Old Field constable, Jordana B. Casciano, individually and in her capacity as Old Field clerk, Barbara Dragone, individually and in her capacity as Old Field treasurer, Marianne S. Feller, individually and in her capacity as Old Field clerk, William Finnamore, individually and in his capacity as Old Field constable,

William H. Hall, individually and in his capacity as former mayor of Old Field, Leroy Hill, individually and in his capacity as Old Field constable, Helaine Katz, individually and in her capacity as Old Field clerk, Jeffrey T. Kracht, individually and in his capacity as Old Field constable, Ronald La Vita, individually, Philip Morales, individually and in his capacity as Old Field constable, Michael Nastasi, individually and in his capacity as Old Field constable, Walter Rothschild, individually, in his former capacity as Old Field Commissioner of Public Safety, and in his current capacity as Old Field Fire & Special Projects Commissioner, James Simons, individually and in his capacity as Old Field Commissioner of Public Safety, and Cary Staller, individually and in his capacity as Mayor of Old Field, Defendants.

Village of Old Field, Third Party Plaintiff,

v.

New York Municipal Insurance Reciprocal, Third Party Defendant.

No. 00–CV–6072(ADS)(ARL).

United States District Court, E.D. New York.

March 31, 2004.

Scott & Scott, L.L.P., Melville, NY (Jonathan C. Scott, of Counsel), for the Plaintiff.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New York City (Thomas W. Hyland, of Counsel), for the Defendants.

Fried & Epstein, LLP, New York City (John W. Fried, of Counsel), for the Third–Party Plaintiff.

Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger, P.C., Garden City, NY (Rona L. Platt, of Counsel), for the Third–Party Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The third-party action involves a dispute over whether the third party defendant, the New York Municipal Insurance Reciprocal ("NYMIR" or the "third party defendant"), has the duty to defend and indemnify the third-party plaintiff, the Village of Old Field (the "Village" or the "third-party plaintiff") in connection with this class action lawsuit. This case is brought on behalf of that class of people who had been ticketed by the Village's constables from 1994 to the present (the "first-party action" or the "*Brewer* action").

Presently before the Court are the following motions: (1) a motion for summary judgment by the Village seeking, among other things, a declaration that the NYMIR has a duty to defend the Village in the *Brewer* action; (2) a motion for summary judgment by the NYMIR, for among other things, a declaration that it does not have an obligation to defend the Village or provide indemnification in the *Brewer* action; and (3) a motion by the Village, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P") 56(f) seeking additional discovery in order to oppose the

motion for summary judgment brought by the NYMIR.

## I. BACKGROUND

From April 1, 1994 to April 1, 2000, the Village of Old Field subscribed to the New York Municipal Insurance Reciprocal as its insurance carrier. As a NYMIR subscriber, the Village was afforded insurance coverage for a variety of exposures including, among other things, Law Enforcement Liability.

The Law Enforcement Liability Policy (the "Policy") provides in relevant part:

[NYMIR] will pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as damages because of WRONGFUL ACT(S) which result in:

1. PERSONAL INJURY
2. BODILY INJURY, or
3. PROPERTY DAMAGE

caused by an OCCURRENCE and arising out of the performance of the INSURED's duties to provide law enforcement and/or other departmentally approved activities as declared in the Application ... and all operations necessary and incidental thereto.

Policy § A.

The Policy included the following definitions:

INSURED—means the [Village] and all full or part-time and all auxiliary or volunteer law enforcement officers of the [Village].

WRONGFUL ACT—means any actual or alleged act, error, omission, neglect or breach of duty by the INSURED.

OCCURRENCE—means an event, including continuous or repeated exposure to conditions, which results in PERSONAL INJURY, BODILY INJURY or PROPERTY DAMAGE sustained, during the policy period, by any person or organization and arising out of the performance of the INSURED'S law enforcement duties.

PERSONAL INJURY—means:

a. Assault and battery;

b. Discrimination, unless insurance thereof is prohibited by law;

c. False arrest, detention or imprisonment, or malicious prosecution;

d. False or improper service of process;

e. Humiliation or mental distress;

f. The publication or utterance of a libel or slander or of other defamatory or disparaging material ...;

g. Violation of civil rights protected under 42 U.S.C.1981 et sequential or State Law;

h. Violation of property rights;

i. Wrongful entry, eviction or other invasion of the right of public occupancy; if such offence is committed during the policy period.

Policy § E.

On October 10, 2000, the plaintiffs commenced the first party action by filing a Summons and Class Action Complaint (the "Initial Complaint") in the United States District Court for the Eastern District of New York. The Initial Complaint named the Village and fifteen current and former employees and/or officials in both their individual and official capacities (the "defendants"). This action was commenced by and on behalf of that class of people who had been ticketed by the Village's constables from 1994 to the present. In particular the *Brewer* plaintiffs allege, among other things, that the Village created a private police force, purportedly cloaked with legitimate public authority, to enforce traffic and other laws and collect fines for alleged violations of those laws through a distinct enterprise. The complaint included violations of the Racketeer Influenced and Corrupt Organizations Act,

18 U.S.C. § 1961 *et seq.,* ("RICO") and 42 U.S.C. § 1983 ("Section 1983").

On or about October 18, 2000, the Village tendered its defense of the *Brewer* action to the NYMIR. Thereafter, on November 14, 2000, NYMIR, through coverage counsel, issued a disclaimer letter, advising the Village that no coverage existed under any of the policies that were issued to the Village prior to its withdrawal from the NYMIR in or about April, 2000.

A First Amended Class Action Complaint was filed on March 14, 2001 (the "First Amended Complaint"). On April 6, 2002, the plaintiffs filed a Second Amended Class Action Complaint (the "Second Amended Complaint"). On October 25, 2002, the Second Amended Complaint was forwarded to NYMIR by counsel to another carrier affording the Village with insurance coverage.

In a letter dated November 7, 2002, the NYMIR, through its counsel, disclaimed coverage for the causes of action set forth in the Second Amended Complaint.

Thereafter, on or about March 11, 2003, the Village filed this third-party complaint against the NYMIR seeking, among other things, a declaratory judgment, pursuant to 28 U.S.C. § 2201, *et seq.,* that NYMIR is obligated to pay for the Village's defense of the *Brewer* action pursuant to the terms of the Policy. The third-party complaint also seeks damages for the NYMIR's alleged breach of the defense and indemnification provisions of the Policy, based on the refusal to pay by NYMIR for the Village's defense and to provide indemnification in the *Brewer* action.

As stated above, presently before the Court are three separate motions: (1) a motion for summary judgment by the Village seeking, among other things, a declaration that the NYMIR has a duty to defend the Village in the *Brewer* action; (2) a motion for summary judgment by the NYMIR, for among other things, a decla-

ration that it does not have an obligation to defend the Village or provide indemnification in the *Brewer* action; and (3) a motion by the Village, pursuant to Rule 56(f) seeking additional discovery in order to oppose the motion for summary judgment brought by the NYMIR.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must "be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, a district court must weigh several considerations in evaluating whether to grant a motion for summary judgment with respect to a particular claim. *Gallo v. Prudential Residential Servs., Limited Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). The Second Circuit indicated that: (1) the moving party carries the burden to demonstrate that no genuine issue respecting any material fact exists; (2) all ambiguities and inferences must be resolved in favor of the non-moving party; (3) the moving party may obtain summary judgment by showing that no rational jury could find in favor of the non-moving party because the evidence to support its case is so slight; and (4) the trial court's duty is confined to issue finding and does not extend to issue resolution. *Id.; see also B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir.1996). In addition, a court should be mindful in such a case that unresolved issues must be material in order to survive summary judgment, and that "the mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary

judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986).

## B. NYMIR's Duty to Defend

As indicated above, the Village seeks a declaration that the NYMIR has a duty to defend the Village in the *Brewer* action and provide indemnity, whereas the NYMIR seeks a declaration that it does not have an obligation to defend or indemnify the Village.

It is well-settled that under New York law, "an insurer's duty to defend is extremely broad and distinct from the duty to indemnify." *Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp.*, 295 F.Supp.2d 335, 338 (S.D.N.Y.2003) (citing *Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 160 (2d Cir.2003) (calling duty to defend "exceedingly broader" than duty to indemnify) (internal quotation omitted)); *see also Commercial Union Assur. Co. v. Oak Park Marina, Inc.*, 198 F.3d 55, 59 (2d Cir.1999) ("under governing New York law, an insurer's duty to defend is exceedingly broad and is separate from and more expansive than the duty to indemnify." (internal citations omitted)); *see also McCostis v. Home Ins. Co. Of Ind.*, 31 F.3d 110, 112 (2d Cir.1994) (citation omitted). Thus, "an insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage." *Fitzpatrick v. Amer. Honda Motor Co.*, 78 N.Y.2d 61, 66, 571 N.Y.S.2d 672, 674, 575 N.E.2d 90 (1991).

"Determining whether an insurer has a duty to defend requires an examination of the policy language and the allegations of the complaint to see if the underlying complaint alleges any facts or grounds which bring the action within the protection purchased." *First Investors Corp., et al. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165–66 (2d Cir.1998) (internal quotations omitted). "The duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage.'" *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175, 667 N.Y.S.2d 982, 984 (1997) (quoting *Fitzpatrick*, 78 N.Y.2d at 65–67, 571 N.Y.S.2d 672, 575 N.E.2d 90); *see also Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir.2002).

However, "no duty to defend exists ... [if] 'there is no possible factual or legal basis on which the insurer will be obligated to indemnify the insured.'" *Napoli, Kaiser & Bern, LLP*, 295 F.Supp.2d at 338 (quoting *Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 160 (2d Cir.2003)); *see also Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir.2001) (the duty to defend continues "until it is determined *with certainty* that the policy does not provide coverage" (emphasis added)).

■ Thus, an insurer must defend "[i]f the complaint contains any facts or allegations which bring the complaint even potentially within the protection purchased." *Technicon Elec. v. Amer. Home Assur. Co.*, 74 N.Y.2d 66, 73, 544 N.Y.S.2d 531, 533, 542 N.E.2d 1048 (1989); *see also Hotel Des Artistes v. Transam. Ins. Co.*, No. 93 Civ. 4563, 1994 WL 263429, at *3 (S.D.N.Y. June 13, 1994) ("[E]ven if only a single claim in the underlying complaint potentially falls within the indemnity coverage of the policy, the insurer must defend the entire action."). An insurer must defend even if covered claims are dismissed by the Court leaving only non-covered claims remaining. *See Harrington Haley LLP v. Nutmeg, Ins. Co.*, 39 F.Supp.2d 403, 409 (S.D.N.Y.1999) ("Al-

though the non-RICO claims were dismissed ... and [the insurer] presumably would have no obligation to indemnify for purely RICO liability, there never has been any assurance that the case ultimately could not result in insured liability. Among the possibilities were amendment of the pleadings at trial to permit submission of non-RICO theories to the jury, an appellate reversal of the dismissal of the Section 1983 claim, and an order for a new trial.").

■ Further, whenever an insurer wishes to exclude certain coverage from its policy obligations, it must do so "in clear and unmistakeable" language. *Kratzenstein v. Western Assur. Co.*, 116 N.Y. 54, 59, 22 N.E. 221 (1889). In addition, "any such exclusion or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272 (1984) (citations omitted).

As stated above, the Second Amended Complaint alleges violations of the Civil RICO statute and Section 1983. The Village maintains that such allegations fall within the Policy's definition of Personal Injury which includes a "[v]iolation of civil rights protected under 42 U.S.C. § 1981 et seq. ...." On the other hand the NYMIR argues that there is no "occurrence" under the Policy because the Initial Complaint, the First Amended Complaint and the Second Amended Complaint repeatedly assert that the VILLAGE had no law enforcement duties and the Policy defines "occurrence" as "an event ... [which arises] out of the performance of the INSURED's law enforcement duties."

■ Contrary to the contention of the NYMIR, the Second Amended Complaint also alleges that the Old Field constabulary "can exist separate and apart from [the complained of behavior], because, even in the absence of that behavior, the Old Field 'constables' could properly be designated as code-enforcement officers to enforce nontraffic related local ordinances." Second Amended Complaint ¶ 103. Thus it cannot be said "with certainty" that the allegations contained in the Second Amended Complaint are excluded by the Policy. *See Hugo Boss Fashions, Inc.*, 252 F.3d at 620.

### 1. Exclusions in the Policy

The NYMIR contends that the allegations in the Second Amended Complaint fall within, among other things, "Exclusion" number seven of the Policy. The Court disagrees.

This Exclusion indicates that the Policy does not apply to

*damages* arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any INSURED or claims of injury arising out of the acts of fraud committed by or at the direction of the INSURED with affirmative dishonesty or actual intent to deceive or defraud.

Policy § D(7) (emphasis added).

The Court finds that this exclusion is not stated in "clear and unmistakeable" language. *Kratzenstein*, 116 N.Y. at 59, 22 N.E. 221; *see also Seaboard Sur. Co.*, 64 N.Y.2d at 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 ("Before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case ... and that they are subject to no other reasonable interpretation." (citations omitted)).

■ In addition, although certain predicate acts alleged in the Second Amended Complaint involving fraud are alleged with

respect to the Civil RICO cause of action, no such allegations are alleged pursuant to the Section 1983 claim. In particular, the plaintiffs' allegations that the Village's constables deprived the them of their rights under the Fourteenth Amendment do not arise from the "willful violation of a penal statute or ordinance" or state that the actions of the constables were "acts of fraud committed by or at the direction of the INSURED with affirmative dishonesty or actual intent to deceive or defraud." *See* Policy § D(7) Thus, at this juncture, the Court is unable to conclude that the plaintiffs' allegation that the Village violated Section 1983 fall "solely and entirely within the policy exclusions." *International Paper Co. v. Continental Cas. Co.*, at 325.

The NYMIR also argues that the proper test to be applied when considering whether an exclusion bars coverage for claims is the "but for" test applied in *Mount Vernon Fire Ins. Co. v. Creative Hous.*, 88 N.Y.2d 347, 353, 645 N.Y.S.2d 433, 668 N.E.2d 404 (1996). The NYMIR maintains that because the plaintiffs' Section 1983 allegations would not exist "but for" the alleged fraud, the Section 1983 cause of action is also excluded. The Court disagrees with the analysis of NYMIR. In *Mount Vernon*, the policy in question expressly excluded coverage for "Assault and Battery." *Id.* at 350, 645 N.Y.S.2d 433, 668 N.E.2d 404. Not only does the Policy not contain an "assault and battery exclusion," *See Agoado Realty Corp.*, 95 N.Y.2d at 146, 711 N.Y.S.2d 141, 733 N.E.2d 213 ("Here the insurance policy does not contain an 'assault and battery' exclusion; *Mount Vernon*, does not apply"), but the plaintiffs can sustain a cause of action for a Section 1983 violation without finding that the Village violated penal statutes or committed acts of fraud.

Thus, because the of the ambiguity of Exclusion number 7, and the nature of the allegations in the *Brewer* action, the NYMIR did not sustain its heavy burden of demonstrating that the plaintiffs claims are excluded from coverage. Moreover, because NYMIR has a duty to defend the Section 1983 cause of action, it must defend the entire complaint. *See Hotel Des Artistes v. Transam. Ins. Co.*, 1994 WL 263429, at *3.

Accordingly, the third-party plaintiff's motion for partial summary judgment on its first cause of action for a declaratory judgment that NYMIR is obligated to pay for the Village's defense of the *Brewer* action is granted and the NYMIR's motion for a declaration that does not have an obligation to defend is denied.

## C. The Village's Motion for Summary Judgment on Damages

As stated above, the Village also moves for summary judgment on its second claim for relief which seeks damages for the NYMIR's alleged breach of the defense provision of its Policy. This cause of action is based on the refusal of the NYMIR to pay for the Village's defense of the *Brewer* action.

Not only does the Village fail to set forth any legal arguments in support of this aspect of the motion, but the Court finds that there are a disputed issues of material fact regarding whether NYMIR is liable for damages. Accordingly, the motion for summary judgment by the Village is denied with respect to the second cause of action.

## D. The NYMIR's Obligation to Indemnify

The NYMIR moves for, among other things, a declaration that it does not have

an obligation to indemnify the Village in the first party action. However, "[w]hile the duty to defend is measured against the possibility of a recovery, the duty to pay is determined by the actual basis for the insured's liability to a third person." *Frontier Insulation Contractors,* 91 N.Y.2d at 178, 667 N.Y.S.2d 982, 690 N.E.2d 866 (quoting *Servidone Constr. Corp. v. Security Ins. Co.,* 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 477 N.E.2d 441 (1985)). Thus, at this stage in the litigation, it is premature for this Court to determine NYMIR's duty to indemnify. Accordingly, the third party defendant's motion for a declaratory judgment that it does not have an obligation to indemnify the Village is denied, without prejudice.

### E. The Public Official's Liability Policy

The NYMIR also seek a declaration stating that the Village does not have coverage for the first-party action under the Municipal Public Officials' Liability Policy. In particular, NYMIR contends that this policy, a claims based policy, expired on April 1, 2000, more than six months prior to the date the first party action was commenced. In opposing this motion, the Village claims that without conducting additional discovery, it cannot adequately respond to NYMIR's contention that Municipal Public Officials' Liability Policy lapsed so as to avoid coverage liability. In this regard, the Village has filed a motion under Rule 56(f) seeking to adjourn consideration of this aspect of NYMIR's motion until they are permitted to take additional discovery.

However, not only does the issue of whether the Municipal Public Official's Liability Policy had lapsed prior to the commencement of the *Brewer* action raise issues of material fact, but the NYMIR failed to provide advance notice that it was moving for summary judgment on this ground in violation of this Court's Individual Motion Rules of Practice. Individual Rule IV(C)(i) requires a party moving for summary judgment to set forth a statement pursuant to Local Civil Rule 56.1 setting forth those items on which there is no material issue of fact. NYMIR's Rule 56.1 Statement contained no reference to its Public Officials' Liability Policy but rather addressed only its Law Enforcement Liability Policy.

Accordingly, NYMIR's motion for a declaration stating that the Village does not have coverage for the first party action under the Municipal Public Official's Liability Policy is denied without prejudice. Because of this denial, there is no need for the Village to take additional discovery at this time. Thus, the Village's motion pursuant to Rule 56(f) is also denied.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Village's motion for a declaration that the NYMIR has a duty to defend is **GRANTED;** and it is further

**ORDERED,** that the Village's motion for summary judgment regarding damages is **DENIED** without prejudice; and it is further

**ORDERED,** that the NYMIR's motion for a declaration that it does not have a duty to defend is **DENIED;** and it is further

**ORDERED,** that the NYMIR's motion for a declaration that it does not have a duty to indemnify the Village is **DENIED** without prejudice; and it is further

ORDERED, that the Village's motion pursuant to Rule 56(f) is **DENIED**

**SO ORDERED.**