EON LABS MANUFACTURING, INC.,
Defendant, Crossclaim Plaintiff
Below, Appellant,

v.

RELIANCE INSURANCE COMPANY
and United Pacific Insurance, Plaintiffs, Crossclaim Defendants Below,
Appellees.

No. 417, 1999.

Supreme Court of Delaware.

Submitted: Feb. 8, 2000.
Decided: June 30, 2000.

George H. Seitz, III, Esquire, Patricia Pyles McGonigle, Esquire of Seitz, VanOgtrop & Green, Wilmington, Delaware; Of Counsel: Thomas C. Papson, Esquire (argued), Daniel G. Jarcho, Esquire, Todd A. Suko, Esquire, of McKenna & Cuneo, Washington, D.C., for Appellant.

Barry M. Klayman, Esquire, of Wolf, Block Schorr and Solis–Cohen, Wilmington, Delaware; Of Counsel: Jacob C. Cohn, Esquire (argued) of Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pennsylvania, for Appellees.

Before VEASEY, Chief Justice, HARTNETT and BERGER, Justices.

VEASEY, Chief Justice:

The central question in this appeal is whether an insurer of a manufacturer has a duty to defend third party claims (in this case mass tort claims known as the "fenphen suits") against that manufacturer where: (1) the insurer's policy excludes

coverage for bodily injury claims of third parties against the manufacturer "arising out of your product" (the "products hazard exclusion"); and (2) the third party claims are grounded upon product liability torts allegedly caused by the manufacturer's product when used and promoted for use in combination with the products of others.

The Superior Court granted summary judgment in favor of the insurer and against the manufacturer-insured, holding that the "arising out of your product" language in the products hazard exclusion was unambiguous and specifically excluded coverage even where the fen-phen suits also involved the products of others. We agree and affirm.

### Procedural History and Underlying Facts

There are pending in other fora numerous individual and class action product liability claims for bodily injury of various users of the fen-phen drug combination against Eon Labs Manufacturing, Inc. ("Eon"), the appellant in this appeal, and other drug manufacturers. Eon produced, promoted and sold the generic drug phentermine. The other manufacturers defending the fen-phen suits produced the diet drug fenfluramine or dexfenfluramine with which phentermine was sometimes combined, promoted and sold. Thus, the name "fen-phen."

Individuals and putative classes in the fen-phen suits allege injury as a result of ingesting either phentermine produced by Eon alone or in combination with the diet drugs fenfluramine or dexfenfluramine. The fen-phen combination was allegedly touted by the various manufacturers as producing an extremely effective diet drug. The fen-phen suits also contain claims based on warranty, misrepresentation, failure to warn, fraud, conspiracy and concerted action. Eon placed in the Superior Court record six of these third party complaints, which were examined by the Superior Court and on which its decision was predicated.

Procedurally this case arose in the context of a declaratory judgment action initiated by Steadfast Insurance Company ("Steadfast") and another insurer against Eon, other drug manufacturers and other insurance companies, including Reliance Insurance Company ("Reliance"), the principal prevailing party in the Superior Court and the Appellee here. The sole issue before us is the Superior Court's decision that Reliance does not have a duty to defend Eon in the fen-phen suits.

We need not detail the various motions in the Superior Court that have led to this appeal. We need not set forth in detail the factual context of the Superior Court's decision because those facts and procedural steps are set forth in the excellent central opinion of that Court dated June 1, 1999,[1] and the Court's subsequent letter opinion on reargument dated August 18, 1999.[2] Reference is made to those opinions for the details and the Superior Court's analysis.

The Superior Court's June 1, 1999 memorandum opinion denied Eon's motion for summary judgment in which Eon sought an order that Reliance is obligated to defend the fen-phen suits. In denying Eon's motion for summary judgment, the Court held that "Reliance has no duty to defend."[3] Thereafter, Eon sought certification by the Superior Court and this Court of an interlocutory appeal in this Court (which was subsequently refused by both Courts). Meanwhile, Reliance moved for summary judgment in its favor, essentially

---

**1.** *See Steadfast Ins. Co. v. Eon Labs Mfg., Inc.,* Del.Super., C.A. No. 98C–01–058 SCD, 1999 Del.Super. LEXIS 272, Del Pesco, J. (June 1, 1999) (Mem.Op.) [hereinafter Mem. Op.].

**2.** *See Steadfast Ins. Co. v. Eon Labs Mfg., Inc.,* Del.Super., C.A. No. 98C–01–0585 SCD, 1999

WL 743982, Del Pesco, J. (August 18, 1999) (Letter Op. on Reargument) [hereinafter Letter Op.].

**3.** Mem. Op. at 14.

based on the same June 1, 1999 memorandum opinion and order that denied summary judgment to Eon. In denying Eon's request for certification of the interlocutory appeal, the Superior Court had said discovery would be permitted before deciding Reliance's motion for summary judgment.[4] Reliance moved for reargument of that procedural determination. The trial court granted Reliance's motion for reargument and granted Reliance's motion for summary judgment on the basis of the June 1, 1999 memorandum opinion, denying discovery and entering a final order under Superior Court Rule 54(b) on this aspect of the case.[5]

Eon claims that Reliance (along with other insurers including Steadfast) must defend it in the fen-phen suits under the various general liability insurance policies. The parties agree that Reliance would have had to defend Eon if the suits had been based *solely* on products of others. Also, it is apparent that Steadfast must cover Eon's defense to the fen-phen claims, but the record indicates that its policy limits are being devoted in large part to defense costs. This leaves in question the ultimate availability of funds should Eon eventually be held liable to the third parties in the fen-phen cases.[6] Thus, Eon seeks to hold Reliance also liable for defense costs and liability coverage.[7]

The Steadfast and Reliance policy coverages appear to be complementary, not duplicative. The Reliance policy, one for comprehensive general liability, *excludes* coverage that is specifically *included* in the Steadfast policy—*i.e.*, liability "arising out of" Eon's products, in this case phentermine.[8]

As noted in the Superior Court's memorandum opinion, the operative term in the Reliance policy[9] is the products hazard exclusion from coverage. That exclusion is set forth in an endorsement stating that "[t]his insurance does not apply to **bodily injury** or **property damage** included within the **products-completed operations hazard**."[10] The definition of this exclusion in the Reliance policy[11] encompasses "all bodily injury ... *arising out of your product*," which is defined as "any ... products ... manufactured" or "sold ... by[ ] you" including "warranties or representations ... with respect to fitness ...

---

**4.** *See Steadfast Ins. Co. v. Eon Labs Mfg., Inc.*, Del.Super., C.A. No. 98C–01–058 SCD, Del Pesco, J. (June 28, 1999), Order at 3 (not presently available on Westlaw or Lexis).

**5.** *See* Letter Op. at 4–5.

**6.** *See* Mem. Op. at 2.

**7.** This case, however, concerns only the duty to defend.

**8.** *See* Mem. Op. at 2.

**9.** Actually, Eon had insurance policies for the period from June 22, 1993, through June 22, 1998, from two insurers, Reliance and its affiliate United Pacific Insurance Company. The Superior Court referred to these policies collectively as the "Reliance Policies." *See* Mem. Op. at 1.

**10.** The bold type appears in the original of the policy. Because of this "products hazard" exclusion in the Reliance policy, "Eon separately purchased products hazard coverage from another insurer," Steadfast, to "complete its insurance program" by securing coverage for precisely this exclusion from the Reliance Policy. Mem. Op. at 1–2.

**11.** The Steadfast Policy uses the same language to define its coverage as the Reliance Policy uses to define the exclusion. *See* Mem. Op. at 2. Our decision does not turn on the architecture of Eon's insurance coverage. We focus solely on whether the Superior Court was correct as a matter of law in holding that Reliance's policy exclusion for product hazards arising out of Eon's product applies to relieve Reliance of the obligation to defend the fen-phen suits. The conclusion of the Superior Court that Steadfast provides the coverage excluded from the Reliance policies is not before us for review. That conclusion does not appear to be contested, however. *See Steadfast Ins. Co. v. EON Labs Mfg., Inc.*, Del.Super., C.A. No. 98C–01–058 SCD, 1998 WL 961791, *4, Del Pesco, J. (Sept. 18, 1998) (Mem.Op.) (holding that Steadfast had a duty to defend Eon's vendors as additional insureds).

or use of your product, and ... failure to provide warnings." [12]

### Superior Court Holding and Scope of Our Review

■ The Superior Court concluded that all the allegations against Eon in the fen-phen suits "come within the scope of the *arising out of* language," including "claims related to the use of Eon's phentermine," "the warranty claims," and "claims of fraud, conspiracy, negligent misrepresentation and concerted action." [13] The basis for this holding is that all claims are "related to the fact that Eon manufactured and distributed phentermine." [14] Finally, the Court held: "There being no claim that is not wholly within the scope of the

exclusion, Reliance has no duty to defend." [15] It is this conclusion of law interpreting an insurance contract and granting summary judgment that we now proceed to review *de novo* on this appeal.[16]

### Applicable Law

There is potentially a threshold choice of law question. We find that, in all probability, either New York or Illinois law applies.[17] The trial court noted, however, that the parties "conceded that the insurance principles under consideration are general principles." [18] We will likewise apply general insurance contract principles on this appeal, aware that the principles we apply should be consistent with the laws of either New York or Illinois.[19]

---

**12.** The italics to the words *arising out of* are added for purposes of this opinion.

**13.** Mem. Op. at 13–14.

**14.** *Id.* at 14.

**15.** *Id.* (citing *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 667 N.Y.S.2d 982, 690 N.E.2d 866, 868–69 (1997), and *Harleysville Mut. Ins. Co. v. Sussex County*, D. Del., 831 F.Supp. 1111, 1130 (1993), *aff'd*, 3d Cir., 46 F.3d 1116 (1994)).

**16.** *See Arnold v. Society for Savings Bancorp, Inc.*, Del. Supr ., 650 A.2d 1270, 1276 (1994); *ABB Flakt, Inc. v. National Union Fire Ins. Co.*, Del.Supr., 731 A.2d 811, 816 (1999).

**17.** Either of these states has the most significant relationship to the dispute. *See Travelers Indemnity Co. v. Lake*, Del.Supr., 594 A.2d 38, 41, 48 (1991). Eon's principal place of business is in New York. The Reliance policies were delivered either in New York or Illinois, the home of Eon's parent.

**18.** Mem. Op. at 5.

**19.** There is no New York or Illinois precedent directly on point. Nevertheless, the cases from those jurisdictions that we have examined are consistent with our interpretation. Although the language of the Illinois and New York cases seems to differ slightly on how to interpret a third party complaint, they are premised on the principle that one first looks for any claim that might potentially fall under the policy, and then the insurance company

must prove the applicability of an exclusion. *See State of New York v. AMRO Realty Corp.*, 2nd Cir., 936 F.2d 1420, 1427 (1991) (applying New York law that "[i]f the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend. Moreover, when an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the 'allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation.' ") (citations omitted); *accord, e.g., Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90, 91 (1991) ("[R]ather than mechanically applying only the 'four corners of the complaint' rule in these circumstances, the sounder approach is to require the insurer to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage. This holding fits easily and appropriately within the existing rules governing coverage disputes" and "there is no reason to believe that the rule we adopt here will engender any more litigation.") (citations omitted); *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d 926, 930 (1991) ("If the underlying complaints allege facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent. . . . unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." This is true "even if only one such theory is within

## Unambiguous Provision

■ Beginning with the premise that we apply general insurance contract principles that are consistent with New York and Illinois law, we look first to determine if the insurance contract is ambiguous. We agree with the Superior Court that it is unambiguous. The term "arising out of" is one that lends itself to uncomplicated, common understanding.[20] Surely, if the fen-phen suits against Eon are characterized as involving solely its product phentermine, those suits arise out of Eon's product. Therefore, they would fall within the exclusion. Product liability suits predicated on the combination of phentermine and/or fenfluramine or dexfenflurame (the "combination claims") likewise arise out of Eon's product phentermine. This must follow because, but for Eon's product, there would be no combination that would lead to the fen-phen claims.[21]

### Interpretation of the Fen–Phen Suits

Eon contends that the Superior Court's interpretation of the fen-phen suits was "flawed, because it focused on the overall cause of the [fen-phen] lawsuits against Eon instead of the specific alleged causes of the plaintiffs' bodily injuries." We agree with the Superior Court that a fair reading of the six fen-phen complaints submitted by Eon makes it clear that the plaintiffs in those cases seek to impose liability on Eon because of the involvement of *its* drug, phentermine. Therefore, the combination claims are not—as Eon claims—"claims seeking to hold Eon liable for injuries from other companies' products." That argument distorts the essential fact that in all of the cases it is the involvement *or* presence of Eon's phentermine (including misrepresentations and failure to warn, etc.) that is the basis of the fen-phen suits.

The Superior court properly dealt with Eon's contention that some fen-phen suits charge it with tortious conduct unrelated to any alleged defect in Eon's product. This contention is based on the argument that the law requires that there be a defect in phentermine itself for the products hazard exclusion to apply. The Court correctly answered that contention on the ground that the fen-phen suits are based on the deleterious effects of the combination of phentermine with other drugs as well as the promotion of the combination, failure to warn, etc. Thus the claims "arise out of" Eon's product just as they arise out of the products of others in the combination.

Finally, Eon claims that the Superior Court erred as a matter of insurance contract interpretation law. Relying principally on the New York case of *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*,[22] Eon claims that "well settled principles of insurance law" require Reliance to defend the fen-phen suits on the ground that the insurer must defend the entire action if any one claim in the fen-phen suits is covered.[23] Here again,

the potential coverage ."); *see id.* 161 Ill.Dec. 280, 578 N.E.2d at 933 (noting that the "applicability of . . . exclusionary clauses is governed by the same liberal duty to defend standard.").

20. *See Jefferson Ins. Co. v. Travelers Indemnity Co.*, 92 N.Y.2d 363, 681 N.Y.S.2d 208, 703 N.E.2d 1221, 1226 (1998) ("We seek the purpose of the insurance policy, in part, by reference to the common sense meaning of the terms that describe the policy's coverage *vis-a-vis* other insurance."). Although Eon correctly notes that exclusions are given narrower interpretations than coverage questions, that principle does not mean a court should deviate from the words actually used.

21. This observation includes those claims that derive from the sole use of Eon's product or its combination with other products—namely claims involving misrepresentations, warranties, failure to warn, fraud, conspiracy, concerted action, etc. We emphasize, however, that this observation pertains only to the premises for the underlying suits and does not reflect any judgment on whether Eon's products deserve, on the merits, to be implicated in the suits.

22. N.Y. Ct.App., 91 N.Y.2d 169, 667 N.Y.S.2d 982, 690 N.E.2d 866 (1997).

23. *See also Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill.2d 127, 237 Ill.Dec.

however, the fatal flaw in this argument is the incorrect premise that the combination claims in the fen-phen suits do not arise out of Eon's product since these claims assert liability against Eon for injuries caused by another company's products. Clearly, the claims arise out of the fact that Eon's phentermine is necessarily a part of the combination claims.

We agree, as did the Superior Court, with Reliance's contention that had not Eon manufactured, promoted and sold phentermine it would not have been sued. We hold that if there is some meaningful linkage between the product and the third party claim, the "arising out of" language unambiguously applies.[24] That is plainly true here. Those suits all involved some meaningful linkage to Eon's drug, phentermine.

### Conclusion

The Superior properly found the term "arising out of" to be unambiguous and correctly applied applicable principles of insurance contract interpretation in holding that the product hazard exclusion of the Reliance policy applied to the fen-phen suits. The fact that the combination, warranty, misrepresentation, failure to warn, fraud, conspiracy and concerted action claims in the fen-phen suits also involved the products of others does not negate the application of the "arising out of" language. Because the policies were unambiguous, summary judgment was properly

granted for Reliance.[25] The judgment of the Superior Court is affirmed.

82, 708 N.E.2d 1122, 1136 (1999) (holding that insurer must defend even groundless claims unless the allegations "fail to state facts" bringing the case "potentially within[ ] the policy's coverage," construing the policy (if in doubt) in the insured's favor).

24. *Cf. Fibreboard Corp. v. Hartford Accident & Indemnity Co.*, 16 Cal.App.4th 492, 20 Cal. Rptr.2d 376, 383 (1993) (observing that the "arising out of" language links the "core factual nucleus" to the bodily injury covered in the policy), *quoted and cited with approval in* Mem. Op. at 7–10 (discussing additionally *Celotex Corp. v. AIU Ins. Co. (In re Celotex*

*Corp.)*, Bankr.M.D. Fla., 149 B.R. 997 (1993), and *In re Dow Corning Corp.*, Bankr.E.D. Mich., 198 B.R. 214 (1996)).

25. Eon claims that it should have been permitted discovery. But it is well established that when a contract is unambiguous, extrinsic evidence to vary the terms of the contract is inadmissible, and discovery attempts to that end are not permitted. *See ABB Flakt*, 731 A.2d at 815; *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, Del.Supr., 702 A.2d 1228, 1232 (1997), *applied in* Letter Op. at 4 n. 12–13.