# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KEITH GOGGIN AND MICHAEL GOODWIN,

          Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. NO.: N17C-10-083 PRW CCLD

Submitted: August 23, 2018
Decided: November 30, 2018

*Upon Plaintiffs Keith Goggin and Michael Goodwin's Motion
for Judgment on the Pleadings,*
**DENIED.**

## MEMORANDUM OPINION AND ORDER

David J. Baldwin, Esquire, Carla M. Jones, Esquire, POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware, Seth B. Schafler, Esquire (*pro hac vice*), Seth D. Fiur, Esquire (*pro hac vice*), PROSKAUER ROSE, LLP, New York, New York, Attorneys for Plaintiffs.

Seth A. Niederman, Esquire, FOX ROTHSCHILD, LLP, Wilmington, Delaware, Joseph Collins, Esquire (*pro hac vice*), FOX ROTHSCHILD, LLP, Chicago, Illinois, Attorneys for Defendant.

**WALLACE, J.**

## I.    INTRODUCTION

Plaintiffs, Keith Goggin ("Goggin") and Michael Goodwin ("Goodwin"), bring the above-captioned action against Defendant, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), seeking declaratory relief from the Court to clarify the scope of coverage of the Directors & Officers Insurance Policy ("D&O Policy") issued by National Union to U.S. Coal Corporation ("U.S. Coal"), a company that is currently in Chapter 7 bankruptcy proceedings. The D&O Policy provides that National Union will pay for, among other things, the damages and defense costs for claims made against U.S. Coal's past, current, or future directors and officers.

After filing for bankruptcy, the trustee of U.S. Coal brought an action against Goggin and Goodwin and their affiliated entities alleging, among other claims, breach of their duties as directors of U.S. Coal for scheming and engaging in self-interested dealings at U.S. Coal's expense. Goggin and Goodwin tendered those claims to National Union, seeking coverage for defense and indemnity under the D&O Policy. National Union denied coverage invoking one of the D&O Policy's exclusionary clauses. Goggin and Goodwin brought this action for a declaration that the exclusionary clause does not apply, and that National Union has the duty to defend.

Now before the Court is Goggin and Godwin's motion for judgment on the pleadings. For the reasons stated below, the motion is **DENIED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Goggin and Goodwin's Complaint lays out the material background facts of: (1) their involvement with U.S. Coal as its members, directors and/or investors; (2) the gradual decline and eventual bankruptcy of U.S. Coal; and (3) the claims asserted against them by U.S. Coal's bankruptcy trustee. National Union, in its Answer, mostly admits the factual events that took place; National Union disputes the framing and completeness of Plaintiffs' allegations. So the Court here can with some confidence recount undisputed material facts relevant to this motion.

### A. PLAINTIFFS' INVOLVEMENT WITH U.S. COAL AND THE D&O POLICY.

Plaintiffs Goggin and Goodwin began their involvement with U.S. Coal, initially as investors, in 2007 and 2008 respectively.[1] They became U.S. Coal directors on October 1, 2009,[2] and served in that capacity until their resignations. Goodwin resigned on October 19, 2012; Goggin on February 3, 2014.[3]

---

[1] Compl. ¶ 17. National Union claims lack of sufficient information to affirm the truthfulness of this allegation. But given National Union's later concession to Plaintiffs' status as "Insureds" covered under the D&O Policy, its lack of information averment is meaningless for purposes of this motion. Nat'l Union Fire Ins. Co. of Pittsburgh, PA's Answer to Complaint ¶ 17. The same is true for National Union's later "lack of information" protests.

[2] Compl. ¶ 20.

[3] Compl. ¶ 20.

National Union issued U.S. Coal a D&O Policy for the period from November 10, 2013, through May 10, 2015, that covered U.S. Coal and its officers.[4] The D&O Policy "pay[s] the **Loss** of an **Individual Insured** …for any **Wrongful Act** … except when and to the extent that the Company has indemnified such Individual Insured."[5] The parties do not dispute that Plaintiffs are "Individual Insureds" covered under the D&O Policy.[6]

## B. PLAINTIFFS FORMED INVESTMENT VEHICLES DURING THEIR DIRECTORSHIP OF U.S. COAL.

During their terms as U.S. Coal investors and directors, Goggin and Goodwin purportedly attempted to reinvigorate U.S. Coal through debt purchase and other capital restructuring by forming two investment vehicles.[7] The first, East Coast Miner, LLC ("ECM"), was formed in late 2009. Goggin was an ECM investor and manager; Goodwin just an investor.[8] In December 2011, Goggin formed the second

---

[4] Compl. ¶¶ 2, 13; Answer ¶¶ 2, 13; Compl. Exhibit A Management Liability, Professional Liability, Crime Coverage and Kidnap And Ransom/Extortion Coverage for Private Companies ¶ Endorsement #21 (extending the policy's original expiration date of November 10, 2014 to May 10, 2015) (this overall policy includes the Director, Officers and Private Company Liability Insurance ("D&O Coverage Section") [hereinafter "D&O Policy"]).

[5] D&O Policy ¶ 1 (Coverage A: Individual Insured Insurance) (emphasis added)

[6] Compl. ¶¶ 5–6; Answer ¶¶ 5–6.

[7] Compl. ¶¶ 18–19, 21.

[8] Compl. ¶ 18.

-3-

vehicle, East Coast Mine II LLC ("ECM II"), and acted as an investor and manager. Again, Goodwin was just an ECM II investor.[9]

## C. BANKRUPTCY OF U.S. COAL AND TRUSTEE'S CLAIMS AGAINST GOGGIN AND GOODWIN.

In 2014, U.S. Coal entered into bankruptcy when its creditors filed a petition for a Chapter 7 proceeding, and a trustee was appointed.[10] Following the bankruptcy filing, on March 24, 2015, the Official Committee of Unsecured Creditors brought suit against Goggin, Goodwin, ECM, and ECM II, alleging, among other things, that Goggin and Goodwin breached their fiduciary duties and committed other acts in favor of their own personal interests ("Underlying Action").[11] Counsel for Goggin and Goodwin tendered a defense request to National Union on April 17, 2015.[12] National Union acknowledged, with reservation, to assume defense for certain claims.[13] But, National Union's position was that the claims against Goggin and

---

[9]    Compl. ¶ 21.

[10]    Compl. ¶ 24; Answer ¶ 24.

[11]    Compl. ¶ 25; Answer ¶ 25 (admitting the complaint's averments and additionally asserts that those acts were taken at the expense of creditors in Plaintiffs' capacity as members of ECM and ECM II).

[12]    Compl. ¶ 27; Answer ¶ 27 (National Union additionally averred factual allegations relating to its Reservation of Rights letter dated June 12, 2015, that reflectd its doubt on the obligation to provide coverage for Goggin and Goodwin).

[13]    While National Union describes its acknowledgement to defend certain claims somewhat differently, in essence, they did not disagree that National Union assumed defense of certain claims. *See* Compl. ¶ 27; Answer ¶ 27.

Goodwin were, by and large, not covered under the D&O Policy. Invoking the policy's Exclusion 4(g)—the so-called "capacity" exclusion—National Union denied their coverage on the ground that Plaintiffs' alleged wrongdoing that breached their fiduciary duties was not "solely by reason of their status as [U.S. Coal] Executives."[14]

Because of the ongoing bankruptcy proceeding, the parties to the Underlying Action filed a First Amended Complaint ("FAC") in January 2017 to substitute the trustee as the plaintiff therein.[15]

Before the FAC was filed, in the fall of 2016, Goggin, Goodwin, National Union, and other parties related to the bankruptcy proceeding attempted to resolve the Underlying Action and related insurance issues through mediation. That was unsuccessful. Plaintiffs and National Union mediated again, unsuccessfully, in September 2017.

### D. PROCEDURAL HISTORY.

After the second unsuccessful mediation, this action was brought. Goggin and Goodwin seek a declaration that Exclusion 4(g) does not apply to the allegations asserted against them in the Underlying Action, and that National Union is obligated to pay all the defense and indemnity costs.

---

[14]     Answer ¶ 27.

[15]     Compl. ¶ 26; Answer ¶ 26.

National Union initially filed a motion to dismiss,[16] which Plaintiffs answered,[17] and National Union followed with a reply brief.[18] The parties later stipulated and agreed, among other things, that National Union would withdraw its dismissal motion and answer the Complaint.[19] National Union filed its Answer. And Goggin and Goodwin now move for judgment on the pleadings.

## III. STANDARD OF REVIEW

A party may move for judgment on the pleadings pursuant to Civil Rule 12(c).[20] The standard for a motion for judgment on the pleadings is "almost identical" to the standard for a motion to dismiss.[21] In determining a Rule 12(c) motion, the Court assumes the truthfulness of all well-pleaded allegations of fact in the complaint,[22] takes those well-pleaded facts as admitted,[23] and then views those

---

[16] D.I. 6 (Def. Nat'l Union's Mot. to Dismiss).

[17] D.I. 13 (Pls.' Opp'n to Mot. to Dismiss).

[18] D.I. 15 (Reply in Further Supp. of Def.'s Mot. to Dismiss).

[19] D.I. 17 (Stipulation And [Proposed] Order Regarding Def.'s Mot. to Dismiss).

[20] Super. Ct. Civ. R. 12(c).

[21] *Blanco v. AMVAC Chem. Corp.,* 2012 WL 3194412, at *6 (Del. Super. Ct. Aug. 8, 2012) (citing *Ross Holding and Mgmt. Co. v. Advance Realty Group, LLC,* 2010 WL 1838608, at *5 (Del. Ch. Apr. 28, 2010)).

[22] *Almah LLC v. Lexington Insurance Company,* 2016 WL 369576, at *4 (Del. Super. Ct. Jan. 27, 2016).

[23] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.,* 624 A.2d 1199, 1205 (Del. 1993).

-6-

facts and draws inferences therefrom in the light most favorable to the non-moving party.[24] The Court accords a party opposing a Rule 12(c) motion the same benefits as a party defending a dismissal motion under Rule 12(b)(6).[25] And a moving party is entitled to judgment on the pleadings only when there are no material issues of fact and the movant is entitled to judgment as a matter of law.[26]

## IV. DISCUSSION

So, with the record developed in the pleadings thus far, does Exclusion 4(g) of the D&O Policy—the "capacity" exclusion—apply to the claims asserted by U.S. Coal's trustee against Goggin and Goodwin in the FAC ("Trustee Claims")?

**THE TRUSTEE CLAIMS CAN BE REASONABLY SEEN TO "ARISE OUT OF" SOME CAPACITY OF PLAINTIFFS OTHER THAN THAT AS U.S. COAL'S DIRECTORS.**

Goggin and Goodwin contend that National Union erroneously denied the coverage on the ground that their alleged misconduct prompting the Trustee Claims was not in an "insured" capacity due to the conflict of interest. According to Goggin and Goodwin, that the alleged conflict of interest existed due to their capacities and status as both the directors of U.S. Coal and the members/managers of ECM and

---

[24]  *Id.* (*citing Desert Equities,* 624 A.2d at 1205).

[25]  *See Ki–Poong Lee v. So,* 2016 WL 6806247, at *2 (Del. Super. Ct. Nov. 17, 2016).

[26]  *Desert* Equities, 624 A.2d at 1205; *Alcoa World Alumina LLC v. Glencore Ltd.,* 22016 WL 521193, at *6 (Del. Super. Ct. Feb. 8, 2016).

ECM II (collectively, "ECM Entities") does not eliminate the coverage via the "capacity" exclusion if the alleged wrongful action was performed in their capacities as directors of U.S. Coal.[27]

National Union proposes a different interpretation of the exclusion's language, asserting that the crux is interpreting the term "arising out of," and discerning the issue of whether the sued-upon conduct "arises out of" a capacity other than that of U.S. Coal's directors.[28]

**The Exclusionary Clause May Be Applied Because the Misconduct Giving Rise to the Trustee Claims Arose Out of Plaintiffs' Capacity as Members/Managers of ECM Entities.**

Goggin and Goodwin champion interpretation of the exclusion's language. They say that because the exclusion applies only when directors act in a capacity wholly "other than" as directors, and because their alleged wrongdoing was undertaken precisely in the capacity as U.S. Coal directors, they are not subject to Exclusion 4(g).[29] Goggin and Goodwin suggest that the exclusion targets claims deriving from a wholly "uninsured" activity or duty, and that the D&O Policy's coverage does not require the complained-of misconduct be taken "solely" in an

---

[27]     Pls.' Mem. In Supp. of Their Mot. for J. on the Pleadings [hereinafter "Pls.' Br."] ¶¶ 1–2.

[28]     Def.'s Resp. to Pls.' Mot. for Partial J. on the Pleadings [hereinafter "Def.'s Opp'n"] ¶ 1.

[29]     Pls.' Br. ¶ 2.

insured capacity.[30] Thus, even if there is the simultaneous existence of conflict of interests and their directorship status, the former does not negate the latter to exclude coverage.

In response, National Union says that the alleged conduct giving rise to the Trustee Claims arose out of Goggin and Goodwin's capacity as members/managers of ECM Entities, and their mere status as U.S. Coal's directors does not *per se* warrant a finding that any action "arises out of" their capacity as directors.[31] Rather, National Union urges the Court to examine the substantive relationship between the actions and the capacity in which those actions were taken.[32]

Exclusion 4(g) of the D&O Policy states:

> The Insurer shall not be liable to make any payment for Loss in connection with any *Claim* made against an insured:
>
> (g) alleging, *arising out of*, based upon or attributable to any actual or alleged *act or omission* of an Individual Insured serving in *any capacity, other than* as an Executive or Employee of a Company, or as an Outside Entity Executive of an Outside Entity[.][33]

---

[30] Pls.' Reply Mem. In Further Supp. of Their Mot. for J. on the Pleadings [hereinafter "Pls.' Reply"] ¶¶ 1–2.

[31] Def.'s Resp. to Pls.' Mot. for Partial J. on the Pleadings [hereinafter "Def.'s Opp'n"] ¶¶ 1–2.

[32] Def's Br. ¶ 2.

[33] D&O Policy ¶¶ 6–7 (emphasis added).

"Claim" is defined as "(i) a written demand ... (ii) a civil ... proceeding ... commenced by ... a complaint; or (iii) a civil ... investigation of an Individual Insured ..."[34] Such a *Claim*, if *arising out of any* acts or omissions of Goggin and Goodwin in *any* capacity other than directors of U.S. Coal, would be excluded from coverage.

Insurance policies are contracts.[35] And "[t]he proper construction of any contract is purely a question of law."[36] The objective is to give effect to the parties' mutual intent at the time of contracting.[37] Under Delaware's objective theory of contract, construing a contract's language should adhere to what "would be understood by an objective, reasonable third party."[38] Absent ambiguity, contract terms should be accorded with their plain, ordinary meaning.[39] A contract term is not ambiguous merely because the parties dispute its meaning.[40] Rather, ambiguity

---

[34]  *Id.* ¶ 2.

[35]  *O'Brien v. Progressive N. Ins. Co.,* 785 A.2d 281, 286 (Del. 2001); *Cont'l Ins. Co. v. Burr,* 706 A.2d 499, 500-01 (Del. 1998) ("[b]ecause an insurance policy is a contract of adhesion ...").

[36]  *Exelon Generation Acquisitions, LLC v. Deere & Co.,* 176 A.3d 1262, 1263 (Del. 2017). *See also Eagle Force Hldgs., LLC v. Campbell,* 187 A.3d 1209, 1212 (Del. 2018) ("[w]hether [a] contract's material terms are sufficiently defined is mostly, if not entirely, a question of law."); *O'Brien,* 785 A.2d at 286.

[37]  *Exelon Generation Acquisitions,* 176 A.3d at 1263.

[38]  *Salamone v. Gorman,* 106 A.3d 354, 367–68 (Del. 2014).

[39]  *Alta Berkeley VI C.V. v. Omneon, Inc.,* 41 A.3d 381, 385 (Del. 2012).

[40]  *Id.*

exists when the disputed term "is fairly or reasonably susceptible to more than one meaning."[41]

The "capacity" exclusion's language is clear and unambiguous, so the Court must accord the words their plain and ordinary meaning.

Turning to the contested term "arising out of," Delaware law has construed the term broadly in accordance with general insurance contract principles.[42] "Arising out of" is a term that "lends itself to uncomplicated, common understanding."[43] Such a broad construction is also supported by "[c]ases from other jurisdictions[.]"[44] Delaware law has since adopted the construction that "arising out of" is broader than "caused by," and is understood to mean "originating from," "having its origin in," "growing out of," or "flowing from."[45] In short, it means "incident to, or having connection with."[46]

---

[41]    *Id.*

[42]    *Pac. Ins. Co. v. Liberty Mut. Ins. Co.,* 956 A.2d 1246, 1256–57 (Del. 2008) (holding that "under Delaware law, the term 'arising out of' is broadly construed to require some meaningful linkage between the two conditions imposed in the contract."). *See also Eon Labs Mfg. v. Reliance Ins. Co.,* 756 A.2d 889, 892–93 (Del. 2000) (acknowledging that although either New York or Illinois law applies, the proposition of a broad construction for the term "arising out of" is consistent under the general insurance contract principles).

[43]    *Eon Labs,* 756 A.2d at 893.

[44]    *Pac. Ins. Co.,* 956 A.2d at 1256 (citing cases from Fifth, Ninth and Tenth Circuits, as well as various state courts that similarly accord a broad construction to the term "arising out of.").

[45]    *Id.,* n.42 (citing *Fibreboard Corp. v. Hartford Accident & Indem. Co.,* 20 Cal. Rptr. 2d 376, 383 (Cal. Ct. App. 1993)).

[46]    *Id.*

Notwithstanding the general tendency to broadly construe the term, Delaware courts have not articulated precisely where the line is drawn between "arising out of," and "not arising out of" in the insurance policy context. So the Court takes occasion here to review some decisions analyzing that term in other circumstances.

Delaware has applied the "but-for" test to determine if a claim "arises out of" a manufacturer's product in a product liability suit.[47] Other courts have applied the "but-for" test to construe a D&O policy's exclusionary clause identical to this one.[48] When the traditionally tort-liability oriented "but-for" test is applied to insurance policy exclusion language, the question is whether the underlying claim would have failed "but for" the purportedly excluded conduct.[49] A claim does not "arise out of" a circumstance or conduct if, independent of that circumstance or conduct, the claim is still valid.[50]

---

[47] *Eon Labs*, 756 A.2d at 893 (finding that, in a product liability suit, the defendant drug manufacturer is liable because "but for" defendant's product, there would not have been actions leading up to the claims).

[48] *See, e.g., Langdale Co. v. Nat'l Union Fire Ins. Co.*, 609 F. App'x 578, 588–96 (11th Cir. 2015) affirming the trial court's application of the "but-for" test in finding that the exclusion was applicable, and no coverage was obligated by the insurer to the conflicted officers of a family-owned business who were also trustees of an affiliated family trust where the underlying self-dealing claims, among other allegations, "arose out of" the alleged breach of duties as trustees and in the meantime, as officers and directors.

[49] *Langdale*, 609 F. App'x at 588.

[50] *Id.*

Here, using the "but-for" test, the purportedly excluded conduct—namely, namely, Goggin and Goodwin's actions taken as members/managers of the ECM Entities—falls under the exclusionary clause.

According to the FAC's allegations, Goggin and Goodwin schemed to form and use the ECM Entities to control U.S. Coal and defraud its creditors by, among other things, entering various agreements that secured them: benefits of a higher return on investment; preferred recovery in the event of U.S. Coal's liquidation; and a loan at a significantly discounted value. The Trustee asserted twenty-one counts against, individually and/or collectively, Goggin, Goodwin, and ECM Entities. Those counts brought against Goggin and Goodwin were largely based on their self-interested dealing that benefited ECM Entities and themselves and undermined the interest of U.S. Coal and its debtors and creditors.

According to those factual allegations and the claims asserted in the FAC, the Court concludes that the Trustee Claims—which give rise to this declaratory action —would not have been established "but-for" Goggin and Goodwin's alleged ECM-related misconduct. Indeed, the alleged formation and use of the ECM Entities to engage in self-interested dealing benefiting themselves and those ECM Entities, all at the expense of U.S. Coal, are no collateral matters but rather the core of the Trustee Claims. "But for" Goggin and Goodwin's roles as members/managers of ECM Entities, the FAC claims would fail.

The Court finds, therefore, that the Trustee Claims asserted in the FAC are most reasonably viewed as having arisen from Goggin and Goodwin's misconduct as members/managers of ECM Entities (although certainly related too to their co-existence as U.S. Coal's directors). Accordingly, the exclusionary clause applies and eliminates National Union's coverage obligation under the D&O Policy. Goggin and Goodwin's incantation of their contrary interpretation of that clause is unavailing.

## V. CONCLUSION

The Trustee Claims asserted against Goggin and Goodwin arose out of their capacity as members/managers of ECM Entities. As such, Exclusion 4(g) applies, Goggin and Goodwin would not be due coverage for the ECM-related activity claims under the D&O Policy, and, as to the specific application made here, they are not due judgment as a matter of law. In turn, their Motion for Judgment on the Pleadings must therefore be **DENIED**.

**IT IS SO ORDERED.**

**Paul R. Wallace, Judge**

-14-